**UNITED STATES of America**
**v.**
**Bella ANGEL et al.**
**Civ. A. No. 72-243.**

United States District Court,
E. D. Pennsylvania.
Aug. 13, 1973.

Robert E. J. Curran, U. S. Atty., Sullivan Cistone, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Michael H. Egnal, Egnal & Egnal, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This action was instituted by the United States to foreclose upon a mortgage. Defendants are all connected, in one way or another, with the management and ownership of a housing project known as Warminster Heights (formerly known as Lacey Park). We have jurisdiction under 28 U.S.C. § 1345. Before us are cross motions for summary judgment.[1]

In 1957, the United States by quitclaim deed conveyed the project now known as Warminster Heights to defendant Bella Angel. As part of the consideration for this conveyance, Bella Angel executed a bond in favor of the United States which was conditioned, *inter alia*, upon payment to the United States of the principal sum plus interest over a period of years. To secure payment of the bond, Bella Angel executed and delivered to the United States a mortgage, which was duly recorded.

The United States alleges that the project has not been preserved and maintained by Bella Angel and the other defendants, and is in fact in violation of numerous county and township fire, health, and sanitation ordinances and building codes. This situation is alleged to constitute a breach of the conditions and covenants in the bond and mortgage, entitling the United States under those instruments to declare the entire unpaid principal plus interest under the bond immediately due and payable.[2]

1. We have previously granted plaintiff's motion to dismiss defendants' counterclaim. United States v. Angel, 347 F. Supp. 830 (E.D.Pa.1972).

2. A demand for payment was made on Bella Angel on November 8, 1971, and was refused. The government initiated this suit on February 3, 1972, seeking foreclosure and the application of the proceeds to the amounts due on the bond and mortgage. At the time the suit was filed, the government also asked for an immediate order granting it possession of the premises with the right to manage and operate the same as mortgagee in possession, collecting and applying the net rents and income toward payment of

The pleadings, affidavits, and exhibits clearly demonstrate the absence of a genuine issue as to any material fact. Covenant 6 of the mortgage provides,

> "That it [the mortgagor] will maintain said property free from waste or nuisance of any kind, and in good condition, and make all repairs, replacements, improvements and additions which may be necessary to preserve and maintain said property and the value thereof. It shall comply with all valid laws, ordinances, and regulations affecting said property or its use. * * * "

The fifth paragraph of the bond provides,

> "AND shall use, operate and maintain the said mortgaged premises as and for a housing project in accordance with all applicable building, fire, health, zoning and other similar laws and regulations affecting the said use, operation and maintenance thereof, as more particularly set forth in the Mortgage."

Warminster Heights is in violation of numerous county and township fire, health, and sanitation ordinances and building codes. These violations, numbering over a thousand, have been fully documented in reports of investigations by the Pennsylvania Department of Environmental Resources, which have been filed by plaintiff.[3]

However, a mortgagee cannot invoke an acceleration clause or foreclose a mortgage on the ground of breach of a covenant against waste or for maintenance and repair unless the value of the mortgaged property has been impaired by the breach; and the mortgagee has the burden of proving the impairment. Tiffany, Real Property, § 1514 (3rd Ed., 1973 Supp.).

Here, plaintiff makes no claim that the value of the mortgaged property has been impaired by the violations.[4] However, the government contends that a different rule is applicable to it than applies to other mortgagees. The crux of the government's argument is that in effectuating the public policy of providing adequate low income housing, the government, as a mortgagee, is not limited by the same restrictions on foreclosure which apply to a private mortgagee. We disagree. The government's argument is much too Orwellian for us. The government qua mortgagee is no different than a private mortgagee, regardless of the social policy the government may be trying to foster in its capacity as mortgagee.[5]

When a mortgagor delivers to the mortgagee his bond and mortgage, the primary obligation is the debt, i. e., the mortgagor's personal undertaking to pay the debt in accordance with the provisions of the bond. The mortgage itself

---

the indebtedness secured by the mortgage. On February 3, 1972, we granted plaintiff's motion for immediate possession, and defendants were ousted from possession and control of the premises. However, on February 23, 1972, we vacated that order and restored the premises to the possession of defendants.

3. *See also*, Mattingly v. Elias, 325 F.Supp. 1374 (E.D.Pa.1971).

4. Defendants have offered the affidavit of John Massimilla, a duly licensed real estate broker who is familiar with real estate values in Warminster Township. His affidavit concludes, " * * * $6,850,000.00 is the minimum value that can be ascribed to the property." On November 8, 1971, when demand for payment was made on defendant Bella Angel, the unpaid balance of the mortgage was $1,031,382.61. That balance has since been further reduced by periodic payments of the principal sum plus interest.

5. "Concentration on a single policy or value obscures other values that may be at stake. Some of these competing values are other public policies. * * * In the regulation of government largess, achievement of specific goals may undermine the independence of the individual. Where such conflicts exist, a simplistic notion of the public interest may unwittingly destroy some values." C. Reich, "The New Property," 73 Yale L.J. 733, 774 (1964).

is merely the collateral security for the payment of this personal obligation. The mortgagor is simply in the position of a person who owes money to another and has given him collateral as security for the payment of this obligation. *See,* Levin, Mortgages and Other Liens, § 72 (1961).

Since defendants have met their obligation to pay their debt to the mortgagee, and since the value of the security has not been impaired, we conclude that defendants' covenanted obligations cannot be altered or increased merely because the government is the mortgagee. Summary judgment will be granted in favor of defendants and against plaintiff.